Good morning. May it please the Court, I am Laurie Edelstein, and I represent the petitioner Arizona Public Service Company, or APS. With the Court's permission, I would like to reserve four minutes for rebuttal. Please watch the clock. This case is about contract interpretation and giving effect to the mutual intent of the parties to the contracts. That is a fundamental and overriding principle of contract construction. But it didn't happen in this case. APS and Edison negotiated two contracts at arm's length. They agreed upon their meaning. They fulfilled their obligations under the contracts. But FERC, instead of giving effect to the party's intent and the plain language of those contracts, disregarded the parties' agreed-upon interpretations and substituted its own erroneous and unreasonable interpretations of those agreements. So could you tell me something? At the time that the second contract is involved, it is agreed that the cost that's going to go to Edison can be passed on to the customers. It seems to me that that's when FERC gets into the picture. Am I missing something? Aren't they the ones that get to approve or disapprove rate adjustments such as that? FERC did have the authority to review the party's calculation of the remaining beneficial use of the transmission agreement, as well as the underlying data. I'm talking about that. I'm talking about when it's determined in the second contract that the money for this whole change is going to come from the rate payers, doesn't FERC have a responsibility to approve or disapprove that issue? Yes, FERC did have the authority to review the payment and whether or not it was supported. The mechanism, though, for the payment itself, which was provided for in Section 25.4 of the transmission agreement, that was part of the filed rate from the beginning of the contract. It wasn't really a formula, right? It was, at that point, it was we agree to agree equitably after negotiation. That's all it said. It said we agree to negotiate an equitable payment. It did set forth four factors for the parties to consider in arriving at the payment. But there's no formula. So FERC's position is there's no formula. We let the parties negotiate, but it's our obligation to determine whether the ultimate costs are appropriate or not. That's correct, although the provision itself, which was an end-of-life provision for a payment to be made at the end of the contract, that actually was part of the filed rate. Contracts in this context. Forgive me for interrupting, but maybe you could just bake in my problem, piggybacks onto Judge Acuda's, because I recognize that you think that FERC had an opportunity to, I'll say, object or not approve what you're describing as a formula, although I tend to agree with Judge Acuda. It's more like a description of we're going to come up with a formula. But be that as it may, at that time, 50 years ago, they didn't even know who was going to pay, which way the money was going to go, right? That's correct. And the parties provided for that in the contract. The contract provides for two different charges or two different rates. Right, but at this point, and at this point, so just to sort of, I don't want to telegraph the point, I'm just going to tell you my problem and then let you have at it. But it just seems to me that at this point, there are surprising, I think some surprising responses by, from FERC to the party's calculation. But if the calculation yielded any increased payment, any additional payment from your client going over to Edison, then it seems to me that just circles back to Judge Wallace's question, which is the FERC's job is to decide whether that's retroactive rate paying. So regardless of whether it was 12 million or two million or three cents, why doesn't it violate, or why was it arbitrary and capricious to decide that that's retroactive rate paying? Because the contract provided for it. It was a filed rate. It was part of the contract that there would be a payment at the end of the life of the agreement. A payment, but not how much. A payment doesn't help at all to FERC. It could be a million dollars or one dollar on your argument and it wouldn't make any difference. But doesn't FERC have a responsibility to approve the amount of the payment? Not that the payment would be made or not, but the amount. Yes, we agree that FERC had the authority to review the amount of the payment. But FERC went further than that. Amount of the payment, you mean how much people are going to pay for this? Yes, how much was gonna be paid, whether or not it was supported, in terms of the value of the beneficial use going forward of the line. And we agree that FERC had the authority to review how the parties arrived at that number. What FERC did though, and this is where we disagree, is that FERC went further than that. It didn't just hold that APS failed to support the payment or the calculation. That's what it said though, right? It said that there was no cost support. You didn't that the APS didn't appropriately support the 12 plus billion dollar payment and didn't show why there was under-recovery or over-recovery and didn't explain why there was a benefit to the rate payer. So isn't that what they said? They did say that. They rejected it for that reason. They did say that and we believe that. And they went on to say the beneficial use should equal net book value, which strikes me as that's the part that's eyebrow raising. Yes, exactly. But it doesn't matter. And I don't know how they got there. It doesn't seem logical to me. I question the support. But it's more than they needed to say. All they, to get back to Judge Akuta's point, even though I can imagine that that's difficult for you to walk away from this, because from your team's perspective, I can appreciate that. But it was your client's burden of proof. And I'm not sure why it was arbitrary and capricious for them to decide what they decided, which is just that you didn't support the payment. And on that first point, in terms of whether or not APS supported the payment, along with the notice of cancellation that was filed, there were worksheets that were submitted that explained how the calculation was arrived at that Edison and APS agreed upon. I looked at the worksheets that were cited in the brief. One of FERC's complaints was that you didn't explain what the longer life of the plant was. And the brief pointed me to something showing a transmission depreciation rates, as opposed to actually stating, this is our estimate of the life of the plant. So there wasn't really anything. It looks like it was a retrospective, let's find something that will suggest what the service life is. There is the sheet, which is at page 302 of the record that shows the depreciation rates. The pages immediately preceding at pages 301 and 300 of the record show the calculation. It shows the life of the transmission assets at that point in time, how long they had been in service. It applies the 2010 transmission depreciation rates, which FERC had approved, and from that, you can calculate what the extended service life would be. So you could calculate it, but in fact, Arizona didn't. And FERC says they didn't tell us what it was. And you're saying they could have. That's the sort of issue that's probably best left for the experts, as opposed to, at least to me, I couldn't calculate a service life for that information. And if FERC had any questions about the calculations or the support or the amount of the payment and the valuation of the beneficial use, it could have set the matter for hearing. It could have issued a deficiency letter, which it often does, to ask APS, how did you calculate it? Why isn't it enough for FERC to say you didn't carry the burden? I mean, that's what they essentially said. You did not explain to us how this was supported. Because in a sense, under Rule 217 of the Commission's Rules of Practice, FERC can't summarily dispose of a matter unless there is a hearing or there is no material facts in dispute, which is essentially what happened here. If FERC had a question. Did you claim that? I didn't see that in your brief as an argument that FERC failed because it failed to have an evidentiary hearing on this point. Is that part of your argument today? Yes, it was raised in our reply brief. We mentioned that we cite to the PG&E versus FERC case for that proposition, which discusses Rule 217 of the Commission's Rules of Practice, which sets forth the requirements in order for FERC to summarily dispose of a matter such as here. When FERC met neither one of them, it didn't hold a hearing, it didn't ask for evidentiary submissions. There was a motion for reconsideration, if I'm remembering correctly. So Arizona had another opportunity to respond to FERC's concerns and apparently wasn't able to do so. Is that correct? There was another very lengthy opinion. Yeah, there were two opinions in response to a request for rehearing, which FERC then denied. FERC did not allow Arizona to present additional evidence. FERC denied the request for rehearing. Can I, can I, forgive me for interrupting right there, but in response to Judge Acuda's question about reconsideration, you're mentioning rehearing. And for me, this seems to be a misnomer. Because there wasn't a hearing, right? There's a request for rehearing. That's correct. But there was no, I'm not missing anything, right? There's no hearing. No, no, there was a, right. Did you request a hearing or is it typical that you would have an opportunity to do that? Because this thing says request for rehearing is what I'm looking at, and then. Yes, it was a request for rehearing and FERC denied that. But typically what FERC does in these situations, if it has any questions about the facts underlying an application such as this for rate recovery, it could issue a notice of deficiency. Just to be absolutely clear, was there a motion for a hearing or a motion for a rehearing? There was a request for rehearing of the order, of the initial order. Right, was there a motion for rehearing? An evidentiary hearing. Was there any motion by Arizona? I am not sure about that. I would need to check. Okay, and that's my question. I can't find one either. Would it be typical to request a hearing hearing? Typically when you file these, it was a notice of cancellation and a request for rate recovery. I do not believe that it's typical to request a hearing at that point. Did your client have an opportunity to do so? I don't know the answer to that question. Judge Wallace is trying to ask a question. Would the expiration agreement be involved in the setting up of the way that you're handling this financially? The expiration agreement or the implementation agreement was simply an agreement between Edison and Arizona to discuss how they would implement the section 25.4 of the agreement and come up with the calculation of beneficial use. So what you're saying is the answer is yes, they would need to have the expiration agreement in order to determine how you arrived at your calculation. They wouldn't necessarily need to do that, but they did that in this instance to agree to negotiate. They asked for it, they didn't get it. I'm asking the question, don't they need it in order to determine how you set this rate, in order to determine whether or not it's reasonable? I'm not sure about that.  that Edison and Arizona entered into was between the parties. It was a contractual agreement for the process for them to agree upon what the value of the future benefits was. Well, you see, we have this, it's not before us. We don't have the expiration agreement. FERC wants it. You say no, we're not gonna give it to you. And I'm asking the question, aren't you in some jeopardy here if the expiration agreement would assist FERC in determining whether or not the way the process was reasonable to the rate payers? The expiration agreement was attached to APS's request for rehearing of the July order, and it was before FERC. It was merely, though, an agreement that implemented the process of negotiation. And on that issue, I'd like to reserve some of my time, but we do not believe that it was an agreement that needed to be filed at FERC under FERC's own orders. If it's an agreement that merely is implementing a filed rate, that agreement itself did not need to be filed. It was provided, though, to FERC as part of the record on the request for rehearing. Well, FERC's still requesting it. I don't understand if you've already given it to, that wasn't clear in the briefs of the record. Where would I find that you've complied with the request for the implementation agreement be given to FERC? It was, it's excerpt of record 71 to 90 is where the implementation agreement was attached as an exhibit to Arizona's request for rehearing. Okay, thank you. I'll save the rest of your time. Good morning, Carol Banta for the commission. Before getting to the larger questions, I can clear up some confusion about the expiration agreement. The commission said that it should have been filed, not, I think, because of the payment, but because the commission said that it changed the termination date of the contract. Is that the only basis for the argument that it should have been filed? Well, yes, because the commission has. No other basis for it, just the change in the expiration. As to the expiration agreement, yes. And it has been filed. I'm sorry, I don't have that docket number for you. It is a separate FERC docket. It was, they did comply and file it following the rehearing order. The other thing I would note. That issue before us then? No, well, the requirement that they had to file is in these orders. They did subsequently comply. I didn't think that you had to take the... So why are we worried about it here if there's already a compliance? Because the petitioners object to them having been required to do that at all. What's the implications of that? Why is that such a significant issue? It is a longstanding issue under the Federal Power Act and the Prior Notice and Filing Requirements Act of 1990, or not Act, I'm sorry, Order, issued in 1993. It's just that because the Federal Power Act requires that rates be filed, jurisdictional rates be filed with FERC, and it also requires that rates shall be just and reasonable. The Commission has strict filing requirements and does sometimes impose penalties on parties. There's a penalty issue. It could be. That has not yet been determined in the... It was given to the Office of Enforcement. You had a question. Judge Acuda asked my first question. It seems that that is the only reason for asserting jurisdiction and requiring the compliance. Their position, as you know from the briefing, is we already told FERC what the termination date was. We let this agreement expire by its own terms, right? And it wasn't 2041. And, well, I can appreciate that FERC required the expiration agreement to be filed, to maybe, I guess, to verify that. But once it was filed and it didn't change the date, why doesn't FERC take the position of saying, you know, thank you very much? Instead, this is referred to it for enforcement compliance. Well, the commission didn't find that it didn't change the date. Really? Yeah. Really, counsel? Where else... They're not part of the agreement, the extended lease provision. Is that so? So you're going for the FERC's position at this point is that the parties changed the term of their agreement? Yes. And I'll explain why I don't want to spend most of my time on it, because it is a compliance issue and not the main substantive issue here. But the commission did look at the language of the 1960s, the original agreement does not have a date. It says the terms of the new lease and the... All extensions, right. And I appreciate that. And your briefing was clear. And I don't want to jump on the messenger here, but it does strike me that that language contemplates that it would be the same parties and it's undisputed. Well, actually, there's a companion document that they also filed the amendment to, which is also in the JA at ER 80... I'm sorry, 91, where that separately removed Edison from responsibility for that lease. But the language said that... It didn't say this new lease that we've come up in 2011 goes to 2041. It says the 1960 and the 1966 lease. Which are, of course, not part of the record. So we have exceptional holes in our record here, by the way, and no hearing and no, of course, no district court opinion. So we're doing the best we can. But on this argument, it strikes me that your position is a pretty tough slog. Well, there's nothing in the agreement that is at issue here, the 1960s transmission agreement, that sets that date. It explicitly says that it is tied to the new lease. So just give you... I'm going to get out of Judge's way, but I mean, when you say there's nothing in here that matters, I mean, for example, there's a drumbeat throughout this briefing that we need to perform a contract interpretation analysis and the parties don't even agree upon what contract law applies. So it is a challenge. But I'm getting — I digress. There's just one question about this, the two supplements. When I look at the transmission agreement and Supplement 3 together, on its face, it's an extension. So it would extend the term. So I understand your argument. The parties say that was not the intent, and there's certainly some logical support for their argument. When we're reviewing it, and we're reviewing a contract in OVO, what do we do about issues of parties' intent, which is a more of a factual-type issue? And is this something that FERC should have had a hearing for a parole evidence-type understanding? How do we understand that? I think we might be conflating both issues, because the commission on the expiration agreement wasn't getting into parties' intent. It said you... Right, but that's the question for us, because the parties say it was never intended that Supplement 3 to the lease extend be applicable to the transmission agreement. Well, the transmission agreement, the only term it had was explicitly tied to that site lease. Even though the site lease is not FERC jurisdictional, the only term that set a potential expiration date in the transmission agreement, just because the lease itself is not jurisdictional doesn't mean that it can't be relevant as having... But it bakes in the question that this is what Judge Okuda is getting at, about whether the parties intended that all extensions, even when their client wasn't a party to one of those extensions, should change that date. So are we just looking at the plain language, because it does say any and all extensions, or do we have to do we take into account logically the parties' intent as they request? Well, the commission said you haven't even brought this agreement before us for us to look at. It was attached to things, but that's maybe what the commission is looking at in the compliance proceeding. I don't know. It really was just and the commission noted that they had multiple instances in the recent past where they had failed to file FERC jurisdictional agreements that are required to be filed. And I've had entire appeals that are about the requirements of prior notice and filing. It is a requirement the commission takes very seriously as a substantive issue because of the Federal Power Act, even if it is secondary in this case. So to go to the main issue here, and it does tie in with that, that this is not just about a contract and what the parties intended. This is about a rate. This is about rate making, not just the amount that Arizona proposed to pay Edison, but they specifically wanted to then pass that cost on to their own transmission service. So that gets back to Judge Wallace's earlier question, and I think maybe we've all asked it in one form or another. The calculation, I think as long as it called for one, this Arizona to reimburse, it doesn't matter how much, right? That wouldn't implicate the conclusion, the legal conclusion that it's impermissible retroactive rate making, would it? I'm sorry. I may have misinterpreted your question. I mean, that alone is a basis for finding that Edison. Right. Yes. That's the point. Then I'm agreeing with you. Yes. Yes. That is one of the three bases. And they would have to show that that decision that it was impermissible rate making, retroactive rate making, was arbitrary and capricious, yes? I'm confused. Who has to show what? I'm sorry. Just asking about the standard here. Oh, yes. Yes. FERC's decision, exactly. Right. Thank you. As I understand it, the argument is that FERC approved the termination provision in the original transmission agreement, saying that there would be negotiations about reimbursement, which would include consideration of beneficial use, and that it's not reasonable to reject that on the grounds that it should be the same as net book value. Well, and the commission didn't say that it has to be, and I'm glad you asked that because that is important, the commission did not interpret beneficial use as necessarily being the same as net book value. When it went through the entire analysis in this case and found that no other value had been shown under section, under the Federal Power Act, section 205, showing where the, Arizona does meet the burden, the commission said, based on what we have in front of us, in this case, they are equal. It was not saying that these terms mean the same thing. But that's what opposing counsel says, the commission really went farther than it needed to go, didn't they? Well, it did have to come to a conclusion of what beneficial use was in this case. Well, why? They had to come to a conclusion that the, that opposing counsel's client hadn't met its burden of proof, right? Well, that would have been enough. You're right. The commission did go further because it was, yes, it could have ended there with the lack of cost support. They argue that the, that for, in effect, said beneficial use going forward is zero because it's the same as in-book value, and that, is that arbitrary and capricious? That no value other than zero has been shown going forward. Not that it couldn't be, and that was the analogy to acquisition premiums. This is not an acquisition premium case, but it is a longstanding principle of cost-based rate making, that when a utility wants to charge its customers through cost-based rates for something other than what it costs to build, or what it costs to build a facility, they have to go above and beyond to show specific quantifiable benefits that justify imposing that on the rate payers through cost-based rate making, and it is a heavy lift. Most acquisition premium cases fail, but not all of them. So that's not what this is? No, but it is a similar principle of cost-based. Can you help me understand what actually is going on here? Obviously, the plant, the transmission line has been recognized by Arizona and has been, all of the ongoing costs have been flowed through to the customers. Why is there a $12 million payment to Edison, who I take it was not involved in the investment in the first place? Yeah, I can explain the context of the case. To some extent, I'd be speculating about the party's motivations. But in the 1960s, Edison was getting exclusive use of this line, although Arizona spent the money to build it. They didn't expect to need it for anything else. So they said, Arizona said in its own filing, and the Commission relied on this, you said coming in that the formula rate in Section 9 of the Transmission Agreement is literally a formula. It's an algebraic formula. It says this input means this, and this means this, and this is how we generate rate. It specifically said 3.25% depreciation, and Arizona explained to the Commission that over 50 years, Edison had completely paid the initial cost. Now, there had been capital additions, the $30 million of net book value that is capital additions. That can be and is being passed through to transmission service rate payers by Arizona now. So they aren't getting it for free. They are paying for the $30 million that it cost to build the additions. But the initial cost, Arizona told us themselves, Edison over the course of that agreement paid the entire initial cost because the agreement was designed to do that because we didn't know we'd have a use for it later. And they're saying they shouldn't have been paying that much because it turns out we do have use for it later. What happened in the 90s, the Commission issued a landmark order that required transmission service providers to give open access under an open access tariff. These dedicated service agreements are a dinosaur. They aren't permissible anymore, but they're grandfathered. And to the utilities that have them, they're extraordinarily valuable. And if you see, the Commission mentioned in paragraph five of the first order, I think, there was an earlier proceeding, not just the initial proceeding where Arizona tried to come in and cancel and pay $40 million to Edison. There was a proceeding where Edison came, after that failed, Edison came in and said, okay, well, what if we assign our dedicated capacity back to Arizona? And they pay us the $40 million. So we still get the $40 million. And the Commission said, the catch with that is when you come in and revise a grandfathered agreement, you lose the grandfathering and it becomes an open access line, it's not dedicated anymore. So it may be, I don't want to speculate, but it may be that even if Edison itself thought that it was overpaying for this line because it was going to complete the cost, but it was still going to be worth something at the end, Edison would have had a strong motivation not to seek to change the filed rate under which it thought it was maybe overpaying because it got that dedicated service and it didn't have to share since 1996, I believe, was the date of that order. And that grandfathering stayed in effect to the end because when the Commission said in 2014, well, if you make this modification, we're going to subject you to all the open access requirements. They said, never mind, we'll just, we'll wait until it expires. Thank you, I appreciate that. But I do, just before I run out of time, I don't know if the Court has any further questions, but I did want to wrap up. The Commission has an independent obligation under Section 205 that Permian Basin in the Supreme Court, Morgan Stanley has recognized that the Commission, Section 205 of the Federal Power Act says that rates shall be just and reasonable, and the Commission takes that responsibility seriously. And it looks, when you come in and tell us that you have a cost-based contract, a cost-based rate design, and you have a cost-based rate component that you want to pass through to rate payers going forward, the Commission is going to apply its expertise in cost-based rate making, very much like in the PG&E case and the Cal PUC cases, where the Commission got deference because rate making is its reason for being, and it is its prime obligation under the Federal Power Act. And if the Court has no further questions, thank you. Apparently not. Thank you. Your Honor's asked about the implementation agreement and the basis for FERC's decision to require it to be filed at FERC, and you were correct about the sole basis for that decision was that FERC's determination that the implementation agreement had changed the term of the agreement. And that decision in and of itself was arbitrary and capricious for the reasons you recognize, that Edison was not a party to the lease extension. Well, but the plain language of the transmission agreement says the term is extended for any and all, any and all supplements, extensions, et cetera. Supplement three says, this is an extension of the lease, and it's to 2041. So if we're reviewing solely for plain language of the contract within those four corners, I don't see why that was an incorrect ruling, you're talking about intent of the parties. When I look at supplement number two, Edison says, well, the lease may terminate before the transmission agreement terminates. Because I cut off at the earlier of the lease termination, or when I sell my interest in the power plants, or the transmission agreement. So the lease and the transmission agreement are not apparently linked. So why isn't the FERC on its face, the FERC's reading of those two contracts correct? Because the Third Amendment to the lease created essentially a new lease. But it doesn't say anything like that in the Third Amendment. It doesn't. Is there anything in the text of the contracts which support your reading about the party's intent? Yes. Under the definition of lease, it was the participants as lessees. And Edison was no longer a leaseholder. It had terminated its tenancy and could not be bound by the unilateral extension of the site lease to the transmission agreement. Was there anything suggesting there was a novation of the 1960 and 66 leases? I didn't see anything to that effect in the supplement. It didn't use the word novation. But I believe under the case law, for a renewal or an extension of a lease, you would have to have a substantial identity of the parties. And here Edison was no longer a party to the lease. Do you have a case supporting that? Yes. There is a case from the Ninth Circuit. It's an older case from 1979, but it's Seamer v. Coghlan Company, 609F2nd, 346, it was a Judge Wallace decision in which the court held the court held that in order for there to be a renewal or an extension of a lease, there has to be continuity of relationships. And here there was no continuity of relationship. Edison was no longer a party. And there were additional terms and conditions, namely an extension of the site lease. And on that, one more point on that. So what do I do with, say, any and all extensions? So you're saying it wasn't in fact an extension of the lease. That's correct. It was something else. That's your position?  And also, even if the date had been changed, in terms of the policy reasons for filing these agreements, those were all satisfied here. Ours, APS, filed its notice of cancellation on April 1st, indicating what the end of the date of the transmission agreement would be. So notice was provided to FERC, notice was provided to APS's customers, no customers objected. So the policy reasons behind the filing of agreements was satisfied in this case. We've taken you over your Could I ask one more question? Yes. I don't know where we end up with the expiration agreement. You, I understand that there's an objection that's been made, but is that, I don't understand, from the arguments I've heard, it is no longer before us because it has been given up. Where are, what's your position of where we are on that issue? Is it still before us or not? The question about whether or not the expiration agreement needed to be filed at FERC is still before the court because it's the basis of the referral to FERC enforcement, the failure to file it in the first instance, which will subject, potentially subject APS to penalties. So that's why the question of whether or not it needed to be filed in the first instance is still a question for this court. FERC determined that APS had failed to file it, violating the Federal Power Act, and then using it as a basis to refer to FERC enforcement, which could subject APS to penalties. And we have no other mechanism to challenge that determination other than in this petition. Okay. Thank you. Okay. The, thank you for your argument. The case of Arizona Public Service Company versus FERC is submitted.
judges: Wallace, Ikuta, Christen